## Ball et al. v. Cawood.

(Decided Oct. 21, 1933.)

E. H. JOHNSON, J. C. BAKER and GOLDEN & LAY for appellants.

FORESTER & CARTER, C. B. SPICER, S. H. BROWN and J. R. CARPENTER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Herbert C. Cawood, as the nominee of the Republican Party, and Clinton C. Ball, as the nominee of the Democratic Party, were rival candidates for sheriff of Harlan county at the regular election held in November, 1937. On canvass of the returns by the election commissioners it was found that Cawood had received a majority of the votes cast and a certificate of election was awarded him. Election contest proceedings instituted by Ball against Cawood resulted in a judgment in the Harlan circuit court holding and declaring the election to be void. On appeal prosecuted by Cawood the judgment of the Harlan circuit court was affirmed by an opinion rendered on June 24, 1938, and mandate which issued immediately was filed in the lower court on June 25, 1938. It will therefore be seen that a vacancy was created in the office of sheriff of Harlan county by reason of the judgment which became final more than 3 months before the general election in November 1938, and less than 70 days before the regular August primary election of that year; and under the provisions of our constitution, section 152, it was necessary that the

vacancy be filled by appointment until the general election in November, 1938, at which time the office shall be filled by election for the remainder of the term.

On July 5, 1938, the Republican executive committee of Harlan county adopted a resolution providing that the nomination of candidates for the vacancy should be made by such committee and proceeded to nominate Cawood as the candidate of that party for the office of sheriff and in conformity with the law a certificate was issued to him. On July 7, 1938, Leslie Ball filed his notification and declaration made out as provided by the primary election laws with Mrs. Elmon Middleton, county court clerk of Harlan county, for the purpose of having his name printed on the ballots at the ensuing August primary election as a candidate for the Republican nomination for the office of sheriff.

Thereafter Cawood instituted this action against Leslie Ball and Mrs. Elmon Middleton, county court clerk of Harlan County, setting up the foregoing and other facts unnecessary to enumerate and prayed that Mrs. Middleton, as county court clerk, be enjoined and restrained from issuing a certificate of nomination to Leslie Ball, as Republican nominee for the office of sheriff to be voted for at the November election 1938 or from filing or causing to be filed a certificate of nomination of the defendant Ball and that Leslie Ball be enjoined from receiving such certificate of nomination or from presenting such certificate of nomination or offering to file same for the purpose of having his name placed on the ballot.

Without entering into detail the issue made by pleading is whether Cawood is the duly and legally nominated candidate of the Republican Party for the office of sheriff under section 1550-4, Kentucky Statutes, or whether that section has been repealed by act of 1936 relating to the nomination of candidates by political parties (Kentucky Statutes, 1550-1c to 1550-1h, inclusive), and whether Ball, being the only person to file a notification and declaration is entitled to receive and file his certificate and have his name printed upon the ballot as the nominee of his party for the office of sheriff. The chancellor decided the issue in favor of Cawood, granted the relief sought and Ball is appealing.

Pending a determination of the action in the Harlan

circuit court the judge granted to appellee a temporary injunction prayed for and a motion was made in this court pursuant to section 297 of the Civil Code of Practice to dissolve that injunction.

Section 1550-4, Kentucky Statutes, provides in substance that candidates for unexpired terms to be filled at the November election shall be nominated at the preceding primary election, provided the vacancy occurred not less than 70 days before the day on which the primary election is to be held; but that if such vacancy occurred less than 70 days before such primary election the nomination shall be made in such manner as may be determined by the governing authorities of the political parties.

In overruling the motion to dissolve the temporary injunction granted by the lower court, Judge Thomas, speaking for the court and disposing of the contention that section 1550-4, supra, had been repealed by the Act of 1936, said:

"It is strenuously insisted by defendants that section 1550-1c, which is section 1 of the 1936 Act, had the effect to repeal by implication section 1550-4, supra. Counsel admit that there is no intimation of an express repeal of the latter section, contained in the 1936 Act. In other words, their contention simply means that the 1936 Act was a complete one within itself, and was intended to supplant all primary statutes theretofore existing, notwithstanding the 1936 Act only purported to repeal other acts 'inconsistent herewith'.

"The repealing section, by implication, of the 1936 Act (1550-1c) prescribes in substance that each and every political party nominate all of its candidates for elective offices, in or at the primary election held at the time provided by law, and that no governing authority of any political party shall have the power to nominate any candidate for any elective office 'other than by primary elections as provided in this act'. But it was provided in this (that 1936 Act) that notification for nominations at regular primary elections should be filed within a minimum limit of time before the holding of the primary election, and which time had been passed, in this case. To sustain defendants' contention would

require the court to write into that statute an exception as to the minimum of time within which notifications might be filed for primary elections in all cases when a vacancy occurs after the expiration of that prescribed minimum time, and which we are asked to do solely under the rule governing implied repeals.

"Such repeals are not favored in the law and will never be adjudged unless it is plainly determinable from the terms of the later statute that it was the intention of the Legislature to repeal the contested prior law. That is never decreed when the later statute makes no reference whatever to the former statute which deals with a contingency or a subject upon which the later statute is entirely silent; and that is especially true when it is necessary to retain the former statute in order to make the entire statutory law on the subject being dealt with harmonious and all-inclusive.

"There is no quarrel to be made with any of the numerous decisions cited by counsel for defendants dealing with the question of implied repeals; but the trouble with counsel is that they fail to grasp the distinction between the conditions dealt with in those cases and those contained in this one. They are widely separated and this case presents a situation to which the doctrine of implied repeals has never been applied, so far as the writer has been able to discover. It is therefore concluded that the 1936 primary election enactment did not repeal section 1550-4 of the former primary statutes, and that the latter is now in full force and effect.

"This being so, the court properly issued the injunctions prayed for and this motion to dissolve them is overruled."

We find no reason to recede from the views expressed in the opinion overruling the motion to dissolve the temporary injunction and therefore adopt and reaffirm same.

The only other question meriting discussion is the contention of appellants that the vacancy occurred when the judgment of the Harlan circuit court was entered and not when the opinion was rendered affirming the

judgment or when the mandate was filed in the lower court. Cases are cited holding that the effect of supersedeas is to preserve the status quo pending the appeal and is not retroactive in effect and does not undo what has already been done. That it merely suspends the efficacy of a judgment and does not, like a reversal, annul the judgment itself. A number of cases cited by counsel refer to the earlier case of Runyon et al. v. Bennett, 34 Ky. 598, 4 Dana 598, 29 Am. Dec. 431. In that case it is held in substance that a supersedeas suspends the efficacy of the judgment and its effect is to stay future proceedings and not to undo what has already been done. A careful reading of that case will reveal that it in effect holds that whatever is done under a judgment after and while it is superseded is done without authority and should be set aside as improper and illegal but that whatever is done under the judgment before the supersedeas takes effect may properly be upheld under authority of the judgment and is not overreached by the supersedeas.

It is manifest that none of the authorities cited sustain appellants' contention. The supersedeas or bond given as required in election contests had the effect of suspending the judgment so that it did not become final and no vacancy in fact existed until the matter had been finally determined on appeal.

This conclusion renders it unnecessary to discuss any other question raised by counsel for the respective parties.

Wherefore the judgment is affirmed.

### (Decided Oct. 21, 1938.)

E. H. JOHNSON, J. C. BAKER and GOLDEN & LAY for appellants.

FORESTER & CARTER, C. B. SPICER, S. H. BROWN and J. R. CARPENTER for appellee.